```
                  UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NORTH CAROLINA
                        WESTERN DIVISION
_____
                                )
UNITED STATES OF AMERICA,        )
                                 )
                                 )   5:18-CR-328-1
         vs.                     )
                                 )
ALESSANDRO CANNIZZARO,           )
             Defendant.          )
_____ )
```

                    WEDNESDAY, OCTOBER 10, 2018
                         SENTENCING HEARING
                BEFORE THE HONORABLE TERRENCE W. BOYLE
                    UNITED STATES DISTRICT JUDGE

APPEARANCES:

On Behalf of the Government:

GABRIEL DIAZ, ASSISTANT U.S. ATTORNEY
U.S. Attorney's Office
New Bern Avenue, Suite 800
Raleigh, North Carolina  27601

On Behalf of the Defendant:

ELLIOT ABRAMS, Esq.
Cheshire Parker Schneider & Bryan PLLC
133 Fayetteville Street, Suite 500
Raleigh, North Carolina  27602

                    AMY M. CONDON, CRR, RPR, CSR
                       Official Court Reporter
                     United States District Court
                        Raleigh, North Carolina
                Stenotype with computer-aided transcription

(Wednesday, October 10, 2018, commencing 11:07 a.m.)

P R O C E E D I N G S

THE COURT:  Alessandro Cannizzaro.

MR. ABRAMS:  Good morning, Your Honor.

THE COURT:  Good morning.  Is this a felony charge that's --

MR. DIAZ:  It's a misdemeanor, Your Honor.

THE COURT:  So why do you need a waiver of indictment if it's a misdemeanor?  Why can't the criminal information be freestanding?

MR. DIAZ:  I don't see why it can't, Your Honor.

MR. ABRAMS:  I don't believe we need one, Your Honor. Occasionally --

THE COURT:  I mean, the Grand Jury only indicts felonies.  You could be prosecuted here for a misdemeanor by a criminal information or citation or warrant.

MR. DIAZ:  Yes, Your Honor.

THE COURT:  So he doesn't need to sign the waiver of indictment, does he?

MR. DIAZ:  No, Your Honor.

THE COURT:  Just asking.

MR. ABRAMS:  That's absolutely correct.

THE COURT:  Okay.  So you're Mr. Cannizzaro.

THE DEFENDANT:  That's correct, Your Honor.

THE COURT:  Are you going to plead guilty to the

criminal information?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you swear to tell the truth?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  How old are you?

THE DEFENDANT:  Forty-seven.

THE COURT:  And can you read, write, speak and understand English?

THE DEFENDANT: Yes, sir.

THE COURT:  Are you now taking any alcohol or drugs?

THE DEFENDANT:  No, sir.

THE COURT:  Have you had enough time to meet with your lawyer and be prepared?

THE DEFENDANT:  That's correct.

THE COURT:  Do you understand him.

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Abrams, do you have any question about your client's competence?

MR. ABRAMS:  No, Your Honor.

THE COURT:  Does the Government have any reason to question his competence?

MR. DIAZ:  No, Your Honor.

THE COURT:  The Court finds the defendant is competent to proceed with this plea hearing.

Mr. Abrams, are you appointed or retained?

MR. ABRAMS:  Retained, Your Honor.

THE COURT:  Have adequate arrangements been made for your compensation?

MR. ABRAMS:  They have, Your Honor.  Thank you.

THE COURT:  Mr. Cannizzaro, are you satisfied with your lawyer's work?

THE DEFENDANT:  Yes, sir.

THE COURT:  What are his rights?  I usually compress the statement of rights for a misdemeanor when I do misdemeanor court.  I mean, do you have the right to -- you have some jury trial rights.  What other rights do you have.  You?  Have the right against self-incrimination?

MR. ABRAMS:  Yes, Your Honor.

THE COURT:  Are they coincident with felony rights or are they different?

MR. ABRAMS:  I think it's all the same rights other than the indictment and -- I'm not sure that the jury trial right applies, but I think that may be a statutory provision. I could be wrong about that, though.  The one I know that doesn't apply is the indictment.

THE COURT:  Is what?

MR. ABRAMS:  The indictment is the only one I'm certain doesn't apply.

THE COURT:  Okay.  Well, as a criminal defendant you have a collection of fundamental rights, and your lawyer can

advise you of those. Suffice it to say that by pleading guilty you won't have a trial, whether it's jury or nonjury, and there won't be an examination of the evidence because you will admit to the crime; and, therefore, obviate the need for proof and evaluation of the evidence. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: You're charged with voting by an alien. The punishment for that is not to exceed 12 months, a fine and one year of supervised release and a special assessment.

So these misdemeanors have various letter definitions. Is this like a level C? Is that the most serious?

MR. DIAZ: Your Honor, I'm not clear on that.

THE PROBATION OFFICER: Your Honor, I believe it would be a Class A misdemeanor.

THE COURT: That's the most serious?

THE PROBATION OFFICER: Yes, that's the most serious and one that the guidelines would apply to.

THE COURT: So the guidelines are compulsory. There will be a guideline with respect to it?

THE PROBATION OFFICER: Yes, Your Honor, there would be.

THE COURT: As opposed to them just -- well, not available at all?

THE PROBATION OFFICER: Correct.

THE COURT:  So we have A, B and C kinds of misdemeanors?

THE PROBATION OFFICER:  Yes, Your Honor.

THE COURT:  C is the lowest?

THE PROBATION OFFICER:  That is correct, Your Honor.

THE COURT:  And that's a petty offense?

THE PROBATION OFFICER:  Yes, Your Honor.

THE COURT:  B is like six-month misdemeanors?

THE PROBATION OFFICER:  Correct.  And, again, this one the statutory penalty was -- I believe was 12 months.  So that's why it would be a Class A.  And the guideline that would be applicable for this one would be, I believe, the 2H2.1.

THE COURT:  Okay.  We'll get back to that in a minute.

THE PROBATION OFFICER:  Yes, Your Honor.

THE COURT:  Okay.  So those are your rights; do you understand that?

THE DEFENDANT:  Yes, sir, Your Honor.

THE COURT:  And the charge against you, as I just said, is voting by an alien with the punishment, as I've indicated.  And you're going to plead guilty to that charge?

THE DEFENDANT:  That's correct, Your Honor.

THE COURT:  Has anyone forced you or pressured you in order to make you plead guilty?

THE DEFENDANT:  No, sir.

THE COURT: Are you doing it out of your own decision?

THE DEFENDANT: Yes, sir.

THE COURT: How do you plead then to being an alien and voting illegally; guilty or not guilty?

THE DEFENDANT: Guilty, sir.

THE COURT: Are you guilty of it?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. You can have a seat.

Do you want to tell me about it.

MR. DIAZ: Yes, Your Honor.

If this case had proceeded to trial, the Government's evidence would show that on November 8th, 2016, in the Eastern District of North Carolina, specifically Wake County, the defendant, a citizen of Italy, not a U.S. citizen, did knowingly vote in the general election; that election was held for the purpose of electing the president, the vice president and a member of the House of Representatives.

THE COURT: Based on this hearing, the Court finds that the plea is voluntary, a factual basis exists. The clerk is directed to enter a judgment of guilty on the misdemeanor.

And what is the prospective guideline?

THE PROBATION OFFICER: Yes, Your Honor. Under 2H2.1 is looks as though the base offense level would be a six and minus two for acceptance, so it would be a four. He has no

criminal history convictions at all so it would be offense level four, criminal history I, which would be zero to six months.

As far as probation goes, because his offense level is less than six, usually it's five years for a misdemeanor; but because the offense level is only four, I believe three years is the most that can be imposed as his term of probation.

THE COURT: Okay. Thank you.

Do you want to say anything about the sentence?

THE DEFENDANT: I came to the United States legally in 1985. I have lived here legally as a permanent resident. I'm married, my wife of 20 years. I have two kids. Me and my wife have never been in trouble with the law.

I applied for my citizenship in 2003. I studied really hard to pass and a second time trial I passed and I was told that I had to come back because the rooms were full, they couldn't swear me in.

Then I called and called to check on it and they said I had to wait. I never received any notification by them.

When my family went to vote, I joined them to vote and I never checked the status of me if I was okay to vote. So I'm here today to take full responsibility, and I'm deeply sorry.

THE COURT: Okay. Thank you. Are you going to continue to pursue your desire to be naturalized as an

American?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  Thank you.  You can have a seat.

Anything from the Government?

MR. DIAZ:  No, Your Honor.

THE COURT:  How did you come to know that the person voted, first of all, and that his citizenship was not established?

MR. DIAZ:  It was an investigation held by the North Carolina State Board of Elections.  They've determined -- it's an ongoing investigation.  They determined approximately 140 individuals who were not eligible to vote did vote in the State of North Carolina.

THE COURT:  How do they make that -- I mean, do they -- there are 5 million people who vote.  They don't go down the list and ask for birth information about each person. I mean, people have been born in all 50 states who are registered to vote here.

I mean, don't they say to you when you go into the Board of Elections and want to register, "Are you a U.S. citizen"?

MR. DIAZ:  They do, Your Honor.

THE COURT:  And you make a declaration that you are.

MR. DIAZ:  Right.

THE COURT:  How do they verify it?  They don't verify

it.

MR. DIAZ:  They conduct an audit.  As I believe happened in this case, after the 2016 election, they conducted an audit.

THE COURT:  How did they follow up and know of the 5 million people who voted in North Carolina -- I think I registered to vote in North Carolina in 1973, and I've tried to vote in every single election ever since then, whether it was primary or general and they have a record that I voted every time, but I don't think anybody went back and got my birth certificate and said, "Okay, he actually was born in the United States."

MR. DIAZ:  Your Honor, my understanding is that North Carolina Department of -- the Board of Elections cross-reference their information with the North Carolina DMV, who also takes applications to register to vote.  And based on that information, that information was then transferred to Homeland Security who conducted an investigation as to the alienage of those individuals.

THE COURT:  The DMV doesn't care if you're a citizen or not, do they?

MR. DIAZ:  They do care because you have to establish legal presence in the United States and specifically in North Carolina.  So DMV would not give an alien --

THE COURT:  You don't have to be a citizen to have a

driver's license, do you?

MR. DIAZ:  But you have to be legally present in the United States in order to get a driver's license.

THE COURT:  You can have a green card and get a driver's license.

MR. DIAZ:  That's correct.

THE COURT:  But if you have a green card, you can't vote.

MR. DIAZ:  Correct, Judge.

THE COURT:  Okay.  So what's your position on the punishment?

MR. DIAZ:  Your Honor, the Government would not object to a probationary sentence in this case.

THE COURT:  Okay.  Mr. Abrams?

MR. ABRAMS:  Your Honor, we would ask for a probationary sentence.

I have a character letter from the Chief of Police of Roseville, if Your Honor would like to see it.  He attests without hesitation to Mr. Cannizzaro's moral and ethical character and said he's the type of person that accepts responsibility when he does something wrong, and that's what he's here doing.

THE COURT:  Well, I mean, his position in the case and in the law is what I would refer to as substantial compliance.  I mean, he didn't take the oath, but he's probably

unique -- maybe not -- but probably unique in the fact that he years ago pursued naturalization and apparently satisfied all the prerequisites to naturalization other than the administration of the oath, which would be materially different from somebody who just lied categorically about it.

MR. DIAZ:  I apologize for the interruption, Judge. Our information says he was ordered to come in and be fingerprints with the Naturalization Service and he did not. He was never fingerprinted.

THE COURT:  When was that?

MR. DIAZ:  It was requested by the Naturalization Service that he appear for a fingerprinting back on June 21st, 2005.

THE COURT:  2005?

MR. DIAZ:  Correct.

THE COURT:  And that was the last request for fingerprinting?

MR. DIAZ:  Yes, sir.

THE COURT:  Okay.

MR. DIAZ:  Because my understanding is because he had not come in to be fingerprinted that's when he was rejected the second time he applied.

MR. ABRAMS:  We've reviewed the file, Your Honor.  He never received the letter telling him to show up.  He had done lot of work to try to pass this test, and we think he would

have shown up if he had gotten a letter. The file says that the letter sent certified mail but there is no receipt for the letter.

So, you know, he didn't know -- he didn't know he needed to show up. So the long and short of it is as it relates to his citizenship, he was denied because he didn't receive notice and he didn't do anything else. But he has attempted to comply, he's passed the test, Your Honor, so we agree with your assessment of that part of things.

The law doesn't provide a --

THE COURT: I'll impose a fine of $200. Is there a 10 or 25-dollar special assessment?

THE PROBATION OFFICER: It is $25, Your Honor.

THE COURT: And a 25-dollar special assessment and that will be his punishment.

MR. ABRAMS: Thank you, Your Honor.

(The proceedings concluded at 11:24 a.m.)

\*       \*       \*

UNITED STATE DISTRICT COURT

EASTERN DISTRICT OF NORTH CAROLINA

CERTIFICATE OF OFFICIAL REPORTER

I, Amy M. Condon, CRR, RPR, CSR, Federal Official Court Reporter, in and for the United States District Court for the Eastern District of North Carolina, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 11th day of October, 2018.

/s/ Amy M. Condon
Amy M. Condon, CRR, CSR, RPR
U.S. Official Court Reporter